IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

|  |  |
|---|---|
| MICHAEL HAIRSTON, *pro se*, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WAL-MART STORES EAST, LP, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 2:18cv619 |

## REPORT AND RECOMMENDATIONS

Before the Court is Defendant Wal-Mart Stores East, LP's, ("Walmart") Motion to Enforce Settlement and memorandum in support. ECF No. 35–36. Pro se Plaintiff Michael Hairston filed an untimely Motion to Deny Settlement Enforcement in response. ECF No. 38. Walmart subsequently filed a Waiver of Oral Argument for Its Motion to Enforce Settlement, ECF No. 39, and Hairston filed a corresponding Motion to Deny Defendant's Waiver, ECF No. 40. On October 27, 2020, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and E.D. Va. Local Civil Rule 72, the United States District Court Judge referred this motion to the undersigned Magistrate Judge for report and recommendations. ECF No. 42. Determining that a hearing was necessary, the undersigned held a remote hearing on Walmart's Motion to Enforce the Settlement Agreement on December 4, 2020.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Michael Hairston filed *pro se* a personal injury complaint against Defendant Walmart in the Norfolk, Virginia Circuit Court on October 19, 2018. ECF No. 1. Pursuant to 28

U.S.C. §§ 1332(a) and 1441(a), Walmart removed the case to federal court. *Id.* Hairston filed an amended complaint on March 8, 2019, asserting he had been injured while shopping at Walmart when he was struck by folding tables which fell off a shelf because of an employee's negligence. ECF No. 13. Following discovery, the parties participated in a settlement conference with Magistrate Robert Krask on December 13, 2019. ECF No. 26. Although the case did not settle at that time, the parties continued negotiating, leading to the disputed events of March 9 to 12, 2020.

According to Walmart, on March 9, 2020 it extended an offer to Hairston to settle the case for $19,000. ECF No. 36 at 1–3 and attach. 1. This negotiation occurred largely through text messaging, although Walmart stipulates that its formal offer was conveyed through a letter it sent to Hairston on March 9 which included a proposed release of liability agreement. *Id.* Importantly, the letter set out the terms of Walmart's offer as follows:

> At this time, Walmart is prepared to offer you $19,000 to resolve this matter before trial.
> Acceptance of any settlement offer made by Walmart is contingent upon your dismissal of the lawsuit, with prejudice. Acceptance of any settlement offer made by Walmart is also contingent upon your signing the attached release of liability agreement which contains both indemnity and confidentiality provisions.

ECF No. 36, attach. 1. While Walmart proposed paying $19,000, Hairston at first responded by text that he accepted the offer, then moments later texted back asking for $20,000 instead. *Id.* and attachs. C and D. Walmart agreed, and texted instructions to Hairston regarding how he would need to meet with Walmart's attorney on March 12, 2020 to sign the release of liability agreement and have it notarized. *Id.* and attach. D. Walmart contends Hairston signified his acceptance to the material terms of Walmart's offer by responding by text on March 10, 2020, "Sounds good. I will meet with her Thursday [March 12, 2020]." *Id.* When Hairston met with the attorney on March 12, he was given a W-9 form to sign, which he balked at doing, and then refused to sign the release. ECF No. 36 at 3. Walmart contends that Hairston demanded another $1,644.30 to

2

settle to cover the costs of his Medicaid lien, which Walmart rebuffed. *Id.* This motion to enforce the settlement agreement followed.

## II. ANALYSIS

This case comes before the Court under 28 U.S.C. § 1332(a)(1) (diversity jurisdiction) and arose from an incident at a Walmart store in the Eastern District of Virginia, therefore Virginia law controls the substantive legal issues at play. *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir. 1993) ("Because the situs of the accident was Virginia, the law of that state will apply in this diversity action."). "Settlement agreements are treated as contracts subject to the general principles of contract interpretation" under Virginia law. *Byrum v. Bear Inv. Co.*, 936 F.2d 173, 175 (4th Cir. 1991), citing *Bangor-Punta Operations, Inc. v. Atlantic Leasing, Ltd.*, 215 Va. 180 (1974). "[T]he essentials of a valid contract must be present to support a compromise settlement. A compromise to be binding must arise from a complete agreement and before an agreement can be complete there must be an acceptance of an offer." *Bangor-Punta Operations, Inc.*, 215 Va. at 183. "Ultimate resolution of the question whether there has been a binding settlement involves a determination of the parties' intention, as objectively manifested." *Snyder-Falkinham v. Stockburger*, 249 Va. 376, 381 (1995). Walmart insists that Hairston manifested acceptance of the offer through his text messages, when he responded first "I will accept" to Walmart's $19,000 offer, then, after seeking $20,000 immediately thereafter, Walmart agreed, advised him he would need to meet with Walmart's lawyer to sign the paperwork before a notary, to which Hairston responded "sounds good."

Had Walmart not manifested its intent that Hairston sign the formal settlement agreement in order for the contract to be binding ("Acceptance of any settlement offer *is contingent upon your signing* the ... release"), Walmart might be correct. *See* ECF No. 36, attach. 1 (emphasis

3

added). However, Walmart's inclusion of this material term to the proposed contract—Hairston's signing of the release—compels the conclusion that there was never an acceptance of Walmart's offer, and thus no binding contract. Simply stated, because Hairston never signed the release, he never "accepted" Walmart's offer, according to Walmart's own terms. Absent such acceptance, there was no enforceable contract.

This conclusion is compelled by the Supreme Court of Virginia's decision in *Golding v. Floyd*, 539 S.E.2d 735 (Va. 2001). In *Golding*, the seller of an appraisal business sued the proposed buyer after the sale fell through and the buyer opened his own appraisal business. After mediating their dispute, the parties reached a putative "settlement agreement memorandum" that provided "This memo of settlement agreement contains the highlights of the terms and conditions and is subject to execution of a formal agreement consistent with the terms hereunder." 539 S.E.2d at 736. The formal agreement was never executed, and the buyer filed a motion to enforce the settlement agreement. The seller contended that the Settlement Agreement Memorandum was not a binding agreement because by its plain language it was "subject to" a formal agreement. *Id.* The Supreme Court of Virginia agreed. The Court found first that courts are required to construe terms of a contract according to their plain meaning when those terms are clear and unambiguous. *Id.* The Court then found that the initial agreement drafted at the mediation "was made subject to and was dependent upon the execution of a formal contract." *Id.* at 737–38. Having so found, the Court concluded "The execution of a formal agreement, therefore, was a condition precedent to the existence of a binding contract. A formal contract was never executed; as a result, no contract exists." *Id.*

Walmart argues here that the execution of the settlement agreement and release was only a formality, and Hairston's intent to accept the terms of Walmart's settlement offer is manifested

4

by his texts. ECF No. 36 at 4–5. Relying on *Sengal v. Fakouri Elec. Eng'g, Inc.*, 2011 U.S. Dist. LEXIS 134820 (E.D. Va., Nov. 22, 2011), Walmart argued at the hearing that, since Hairston had been provided the proposed release agreement previously, his text messages "I accept" and "sounds good" are sufficient manifestation if his intent to complete his acceptance of Walmart's offer. *Sengal* is inapposite, however, for two reasons. First, in *Sengal*, the court found that a written terms sheet signed by the parties at a settlement conference constituted a complete settlement agreement, even though the parties agreed to subsequently draft a more formal agreement. At the settlement conference the Magistrate Judge put the parties on the record to affirm their understanding that the drafted terms were the complete agreement between the parties. Under those circumstances, the court found that the more formal agreement was unnecessary to bind the parties. Here, Walmart specifically conditioned Hairston's acceptance of their offer on his signing of the release of liability agreement. Walmart's conditional language in its settlement offer that "acceptance of any settlement offer made by Walmart is also contingent upon your signing the attached release…" makes this case much more like *Golding* than *Sengal*. If anything, Walmart's material term that acceptance of the offer was "contingent upon" Hairston's signing of the release is perhaps even more restrictive than the parties' acknowledgment in Golding that the initial agreement was made "subject to" a formal contract.

Second, regardless of *Hairston's* manifested intention, *Walmart's* intention that Hairston's signing of the release was a material term was manifested by Walmart's specific language in the settlement terms it proposed in its March 9, 2020 letter. In other words, Walmart manifested its intention that it would not consider itself bound by any settlement unless and until Hairston signed the release. As the Supreme Court of Virginia has held, "In evaluating a party's intent, however, we must examine his outward expression rather than his secret, unexpressed intention . . . . A

meeting of the minds requires a *manifestation* of mutual assent, and a party's mental reservation does not impair the contract he purports to enter." *Wells v. Weston*, 229 Va. 72, 78-9 (1985) (emphasis in original)(citations omitted). That Walmart might have secretly harbored the unexpressed position that it really would consider itself bound by a settlement agreement before Hairston signed the release, despite its formal condition making acceptance "contingent upon" Hairston's signing, does not bear upon the determination of the whether their has been a formal offer and acceptance.

Walmart expressly conditioned Hairston's acceptance of its settlement offer on his execution of a formal release of liability agreement. Hairston did not sign the agreement; therefore, no contract was consummated. As a result, the undersigned **RECOMMENDS** that Walmart's Motion to Enforce the Settlement Agreement be **DENIED**.

### III. RECOMMENDATIONS

For the aforementioned reasons, the undersigned **RECOMMENDS** that Walmart's Motion to Enforce Settlement Agreement, ECF No. 35, be **DENIED**, and the case returned to the active docket to be set for trial.

### IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen (14) days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections

within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendations to Plaintiff and all counsel of record.

It is so **ORDERED**.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
December 7, 2020